**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | )   **CRIMINAL NO. 17-0003-WS** |
| | ) |
| **TEOFILO RUIZ-MURILLO,** | ) |
| **ERCIRILO MURILLO-RUIZ, and** | ) |
| **JHONATAN GRANJA ANGULO,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter comes before the Court on defendant Teofilo Ruiz-Murillo's Motion to Dismiss Indictment (doc. 41), Motion for Severance (doc. 42) and Motion to Suppress (doc. 47). The Motions have been briefed and are now ripe.  Co-defendants Ercirilo Murillo-Ruiz and Jhonatan Granja Angulo have filed Motions to Adopt Ruiz-Murillo's Motion to Dismiss and Motion to Suppress.  (*See* docs. 49 & 50.)  These Motions to Adopt are **granted**.  As such, the Court's rulings set forth herein as to Ruiz-Murillo's Motion to Dismiss and Motion to Suppress apply with equal force to all three defendants.[1]

**I.     Background.**

On January 25, 2017, a two-count Indictment (doc. 32) was filed in open court as to defendants, Ercirilo Murillo-Ruiz, Teofilo Ruiz-Murillo, and Jhonatan Granja Angulo.  Count One of the Indictment charges that, from on or about December 1, 2016 until on or about December 9, 2016, within the extraterritorial jurisdiction of the United States, defendants conspired to possess with intent to distribute at least one kilogram of cocaine on board a vessel subject to United States jurisdiction, all in violation of 46 U.S.C. § 70506(b).  Count Two

---

[1]     For purposes of this Order, the Court has reviewed and considered the 44-minute court audio recording of the preliminary hearing conducted before Magistrate Judge Nelson on January 17, 2017, including specifically the testimony of HSI Special Agent Jason Greene.  (*See* doc. 17.)  During that hearing, Special Agent Greene was cross-examined at length by counsel for each of the three defendants, including Ruiz-Murillo's attorney, concerning matters germane to the Motion to Dismiss and Motion to Suppress.

charges that on or about December 9, 2016, in the Southern District of Alabama and elsewhere, defendants possessed with intent to distribute approximately one kilogram of cocaine on board a vessel subject to United States jurisdiction, all in violation of 46 U.S.C. § 70503(a)(1).  Thus, both counts are charged pursuant to the Maritime Drug Law Enforcement Act, 46 U.S.C. §§ 70501 *et seq.* (the "MDLEA").

Affidavits and written statements submitted by Government agents delineate the facts underlying the Indictment as follows:[2]  On December 9, 2016, a Maritime Patrol Aircraft detected a Target of Interest ("TOI") at a location off the coast of Colombia.  The TOI was described as a 25-foot long Panga Go Fast Vessel with the name DIOS Y MADRE painted on the hull, with three crew members / passengers and two outboard engines.  The U.S. Coast Guard cutter DEPENDABLE maneuvered to intercept the TOI, and dispatched its helicopter and small boat to assist in that endeavor.  As the Coast Guard closed in on the DIOS Y MADRE, the TOI's crew jettisoned its cargo.  The TOI then stopped, with all three crew members moving to the middle of the vessel and raising their hands.  Coast Guard officials boarded the TOI, after which the three occupants (identified as Murillo-Ruiz, Ruiz-Murillo and Angulo) all claimed Colombian nationality.  Murillo-Ruiz claimed to be the master of the TOI, and indicated that the DIOS Y MADRE was a Colombian flagged vessel.  Ultimately, Murillo-Ruiz volunteered that he wished to make a confession about having illegal narcotics on board.  The Coast Guard's search of the jettison field resulted in seizure of one kilogram-sized package that tested presumptively positive for cocaine.  The three occupants of the TOI were detained and brought on board the DEPENDABLE.  As for the Go Fast Vessel, it had been taking on water throughout the evening and there were no suitable towing points; therefore, Coast Guard officials sank the vessel as a hazard to navigation, but not before performing Ionscan swipes over the vessel's rails and holds, taking measurements, sketching out the vessel, and taking photographs.  The Coast Guard transported the three defendants to Guantanamo Bay, Cuba, from which they were transported directly to Mobile, Alabama.

---

[2]     To be clear, by reciting the contents of these exhibits, the Court makes no findings of fact and does not accept the Government agents' statements as true and correct.  Rather, the undersigned reviews the Government's factual showing in order to place the pending motions in their proper context.

## II.     Analysis of Motion to Dismiss Indictment.

In his Motion to Dismiss Indictment, Ruiz-Murillo raises a host of objections.  In particular, he demands relief on the following grounds: (i) lack of subject-matter jurisdiction, and violation of his Confrontation Clause rights as to evidence of jurisdiction; (ii) improper venue; (iii) failure by the Government to follow proper procedures for obtaining "Statement of No Objection" and "Right of Visit" approval from the Colombian government; (iv) destruction of vital evidence by the Coast Guard; and (v) unconstitutionality of the MDLEA.  Each assertion will be addressed in sequence.

### A.     Jurisdiction / Confrontation Clause.

The MDLEA provides that "[j]urisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge."  46 U.S.C. § 70504(a).  The statute makes it unlawful for an individual "[w]hile on board a covered vessel" knowingly or intentionally to "manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance."  46 U.S.C. § 70503(a)(1).  This prohibition applies "even though the act is committed outside the territorial jurisdiction of the United States."  § 70503(b).  The term "covered vessel" is defined as meaning, in relevant part, "a vessel of the United States or a vessel subject to the jurisdiction of the United States."  § 70503(e)(1).  And the statutory prerequisite of a "vessel subject to the jurisdiction of the United States" may be satisfied under the MDLEA in any of six enumerated manners, including "a vessel without nationality."  46 U.S.C. § 70502(c)(1)(A).[3]  Finally, the term "vessel without nationality" is statutorily defined as including "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the

---

[3]     The full list of avenues pursuant to which a vessel may be classified as one subject to the jurisdiction of the United States for MDLEA purposes is as follows: "(A) a vessel without nationality; (B) a vessel assimilated to a vessel without nationality …; (C) a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States; (D) a vessel in the customs waters of the United States; (E) a vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States; and (F) a vessel in the contiguous zone of the United States … that … is entering the United States; has departed the United States; or is a hovering vessel."  46 U.S.C. § 70502(c)(1).

vessel is of its nationality."  46 U.S.C. § 70502(d)(1)(C).[4]  Taken in the aggregate, then, the MDLEA provides that the United States has subject matter jurisdiction over a defendant's possession with intent to distribute a controlled substance on board a vessel without nationality, meaning a vessel for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

Here, the Government's evidence (which defendants neither refute nor contradict) is that after the Coast Guard boarded the DIOS Y MADRE, defendant Murillo-Ruiz represented that he was the master of the vessel and claimed that it was a Colombian flagged vessel.  (Doc. 52-2, at 6, 25.)[5]  The Government also has produced a Certification by the United States Department of State dated January 11, 2017, bearing the signature of then-Secretary of State John F. Kerry (subscribed by the Assistant Authentication Officer of the Department of State), and the seal of the Department of State.  (Doc. 52-1.)  That Certification reflects that, after Murillo-Ruiz made a claim to Coast Guard officials that the DIOS Y MADRE was of Colombian nationality, "the Government of the United States requested that the Government of the Republic of Colombia verify the registry or nationality of the suspect vessel, and if confirmed, grant authorization to board and search the vessel."  (Doc. 52-1, ¶ 4(b).)  On the same date,[6] the Certification

---

[4]        The MDLEA provides that a vessel may also qualify as a "vessel without nationality" for jurisdictional purposes if it is either "(A) a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed; [or] (B) a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel."  46 U.S.C. § 70502(d)(1)(A)-(B).  Neither of these alternative mechanisms is applicable here.

[5]        Lieutenant Junior Grade Aaron C. Black, who was the Pursuit Mission Commander for the Coast Guard boat that intercepted the TOI and who was physically present at the time the claim of nationality was made, submitted a written statement that included the following: "When asked who the master of the vessel was, one man spoke up and claimed to be the master later identified as Mr. Ericirilo Murillo Ruiz.  We asked the master if he wanted to make a claim of nationality for the vessel, he claimed it to be a Colombian flagged vessel." (Doc. 52-2, at 25.)

[6]        There is a discrepancy in the Government's written materials as to whether the Coast Guard's interception of the DIOS Y MADRE occurred on December 8, 2016 or December 9, 2016.  The confusion appears to stem, at least in part, from the fact that these events transpired during the overnight hours.  The inconsistency in dates is immaterial to any issue presented in the Motion to Dismiss or Motion to Suppress, and defendant does not suggest otherwise.

continues, "the Government of the Republic of Colombia replied that it could neither confirm nor deny the vessel's registry or nationality." (*Id.*, ¶ 4(c).)  On its face, then, the State Department Certification establishes that the DIOS Y MADRE was a "vessel without nationality" (and, hence, a vessel subject to United States jurisdiction pursuant to § 70502(c)(1)(A)) because it was "a vessel aboard which the master or individual in charge makes a claim of nationality and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality."  46 U.S.C. § 70502(d)(1)(C).

Moreover, insofar as Ruiz-Murillo would argue that the Certification is insufficient proof of jurisdiction, the plain language of the MDLEA is fatal to any such contention.  After all, the MDLEA expressly provides "[t]he response of a foreign nation to a claim of registry under paragraph [§ 70502(d)(1)(C)] may be made by radio, telephone, or similar oral or electronic means, ***and is proved conclusively by certification of the Secretary of State or the Secretary's designee***."  46 U.S.C. § 70502(d)(2) (emphasis added).   Simply put, then, the Certification is conclusive proof that the Republic of Colombia notified the U.S. Government that it could neither confirm nor deny that the DIOS Y MADRE was of Colombian nationality, and thus, that the vessel qualified as a "vessel without nationality" giving rise to MDLEA jurisdiction pursuant to § 70502(c)(1)(A).

In response, Ruiz-Murillo balks that this arrangement violates his rights under the Confrontation Clause.  Defendant's position is that, "To the extent that the government relies on the Certification by the Secretary of State to establish facts without the real right of confrontation, the MDLEA is unconstitutional."  (Doc. 56, at 2.)  Although Ruiz-Murillo does not acknowledge it, the Eleventh Circuit has definitively rejected this precise argument in the MDLEA context.  *See, e.g., United States v. Campbell*, 743 F.3d 802, 806 (11th Cir. 2014) ("The Confrontation Clause does not bar the admission of hearsay to make a pretrial determination of jurisdiction when that hearsay does not pertain to an element of the offense.  Because the stateless nature of Campbell's vessel was not an element of his offense to be proved at trial, the admission of the certification did not violate his right to confront the witnesses against him.").[7]

---

[7]      *See also United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016) ("But under any standard of review, plain or otherwise, there was no Confrontation Clause violation. A United States Department of State certification of jurisdiction under the MDLEA does not implicate the Confrontation Clause because it does not affect the guilt or innocence of a (Continued)

Thus, Ruiz-Murillo's Confrontation Clause objection to the Government's use of the Certification as conclusive proof that the DIOS Y MADRE was a vessel subject to United States jurisdiction for purposes of the MDLEA is misplaced and unpersuasive.

For all of the foregoing reasons, the Court concludes that the Government has made a sufficient showing to establish subject-matter jurisdiction and to defeat Ruiz-Murillo's jurisdictional challenge as set forth in the Motion to Dismiss Indictment.

**B.      Venue.**

Next, Ruiz-Murillo contends that the Indictment should be dismissed for improper venue. The MDLEA provides that for violations of § 70503 (*i.e.*, possession of with intent to distribute a controlled substance on board a vessel subject to the jurisdiction of the United States), venue properly lies in "the district at which the person enters the United States." 46 U.S.C. § 70504(b)(1). The Government states that the Coast Guard transported Ruiz-Murillo and his co-defendants to Guantanamo Bay, Cuba, where Special Agent Jason Greene of Homeland Security Investigations met with them, and subsequently accompanied them to Mobile, Alabama. Defendants have not controverted this narrative.[8]  For purposes of § 70504(b)(1), Guantanamo

---

defendant."); *United States v. Persaud*, 605 Fed.Appx. 791, 796 (11ᵗʰ Cir. Mar. 20, 2015) ("a State Department's certification under the MDLEA, admitted to establish subject-matter jurisdiction during a pretrial hearing, does not violate the Confrontation Clause."). The reasoning underlying this determination is that the MDLEA's jurisdictional requirement has nothing to do with an individual defendant's rights and everything to do with international diplomacy. As the Eleventh Circuit has explained, "the jurisdictional requirement serves as a diplomatic courtesy to foreign nations and as a matter of international comity. … Proof of jurisdiction does not affect the defendant's blameworthiness or culpability, which is based on the defendant's participation in drug trafficking activities, not on the smoothness of international relations between countries." *Campbell*, 743 F.3d at 807 (citations and internal quotation marks omitted). By contrast, "[t]he Confrontation Clause protects a defendant's trial right to confront testimony offered against him to establish his guilt." *Id.* at 808. Thus, the Confrontation Clause "does not apply to this pretrial determination of jurisdiction where the certification does not implicate either the guilt or innocence of a defendant charged with an offense under the [MDLEA]." *Id.* at 809.

[8]      Surely, defendants would know if they had entered the United States at some point other than Mobile, Alabama. Yet they have not made any such allegation, but have instead limited themselves in the Motion to Dismiss to a vague and conclusory statement that "the indictment fails to adequately state venue." (Doc. 41, at 2.) The Court will not grant defendants a hearing to explore venue where defendants have identified no facts (obviously within their (Continued)

Bay was not defendants' point of entry into the United States.  *See, e.g., United States v. Fuentes*, 877 F.2d 895, 900 (11th Cir. 1989) ("Because the United States Naval Base at Guantanamo Bay does not have a federal district court, it is not a district within the meaning of 46 U.S.C.App. § 1903(f). … [V]enue is appropriate in the district into which a defendant is brought after his arrest on the high seas.") (citations and footnote omitted).  The Government's proffer reflects that the Southern District of Alabama was the first place defendants were brought in this country; therefore, absent any contrary showing or assertion by defendants, venue properly lies in this judicial district by operation of 46 U.S.C. § 70504(b).  *See United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003) ("Venue was proper in the Middle District of Florida because it is uncontested that Rendon's entry into the United States occurred within that district.").  This objection is overruled.

> **C.    *Statement of No Objection / Right of Visit.***

As his third ground for seeking dismissal of the Indictment, Ruiz-Murillo asserts that the Government failed to "follow the proper procedure for obtaining 'Statement of No Objection' (SNO) and 'Right of Visit' (ROV) approval from the Colombian government."  (Doc. 41, at 2-3.)  In support of this contention, Ruiz-Murillo cites the subsection of the MDLEA providing that a vessel is subject to United States jurisdiction if it is "a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States."  46 U.S.C. § 70502(c)(1)(C).  Defendant's assertion, then, is that the Government failed to obtain consent or waiver from the Colombian government pursuant to § 70502(c)(1)(C).

The fundamental shortcoming in defendant's argument is that the Government is not relying on § 70502(c)(1)(C) as the predicate for deeming the DIOS Y MADRE subject to the jurisdiction of the United States.  As discussed *supra*, United States jurisdiction over the vessel was achieved pursuant to § 70502(c)(1)(A), because the DIOS Y MADRE qualified as a "vessel without nationality" for purposes of the MDLEA.  Stated differently, the Government was not

---

possession) disputing the Government's account of where they entered the United States, so as to establish venue pursuant to 46 U.S.C. § 70504(b)(1).  To conduct an evidentiary hearing on venue under these circumstances would amount to a pointless fishing expedition where defendants have personal knowledge of any facts they may need to contest venue, but have not rebutted the Government's factual showing that venue exists in this judicial district.

required to comply with the procedures of § 70502(c)(1)(C) because jurisdiction is supplied by § 70502(c)(1)(A).  Relatedly, § 70502(c)(1)(C) is inapplicable because the DIOS Y MADRE was not a "vessel registered in a foreign nation" for MDLEA purposes; indeed, as reflected in the Certification, after Murillo-Ruiz claimed that the vessel was of Colombian nationality, the Colombian government notified United States authorities "that it could neither confirm nor deny the vessel's registry or nationality."  For this reason, as well, defendant's reliance on § 70502(c)(1)(C), and his reference to SNO and ROV procedures pursuant to that subsection, does not entitle him to relief from the Indictment.

### D.     Destruction of Evidence.

As the fourth ground for his Motion to Dismiss, Ruiz-Murillo objects that the Government violated his Due Process rights by sinking the DIOS Y MADRE rather than towing it to the nearest port.  Ruiz-Murillo contends that through these actions, he was deprived "of evidence whose exculpatory value was apparent and which could be expected to play a significant role in his defense and which he would be unable to obtain by other reasonably available means."  (Doc. 41, at 4.)

The Government's evidence, in the form of Coast Guard reports from officers involved in the interception of the DIOS Y MADRE and the detention of defendants, is that the vessel was in poor condition, that it was taking on water, and that there were no suitable towing points nearby.  In light of these circumstances, the Coast Guard boarding team inspected the DIOS Y MADRE, took measurements and photographs of the vessel and its contents, drew sketches, took video, and inventoried defendants' personal belongings.  (Doc. 52-2, at 26.)  The boarding team also took nine Ionscan swipes of the vessel covering all rails and holds.  (*Id.*)[9]  Coast Guard officials ultimately sank the DIOS Y MADRE as a hazard to navigation by using a flare to set it on fire. (*Id.* at 26, 27.)  Ruiz-Murillo's position is that the sinking of the vessel under these circumstances amounted to a Due Process violation.

As a matter of settled law, "In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to

---

[9]     Those swipes were later tested for controlled substances and resulted in positive detections of cocaine (five swipes), methamphetamine (one swipe), or cocaine and methamphetamine (two swipes) at levels of between 1% and 20%.  (Doc. 52-2, at 39.)  One swipe came back negative for controlled substances.  (*Id.*)

significantly contribute to his defense." *United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006) (citations omitted).  "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* (citations omitted).  "[F]ailure to preserve this potentially useful evidence does not violate the due process clause unless a criminal defendant can show bad faith on the part of the police." *Id.* (citations omitted).

Defendant makes none of the necessary showings to establish a due process violation, as to either materiality or bad faith.  With regard to materiality, Ruiz-Murillo does not identify any evidence onboard the vessel that would have had apparent exculpatory value, much less make any argument or other showing that comparable evidence could not be obtained by other reasonably available means (such as the Coast Guard's photographs, videos, measurements and sketches, or testimony of Coast Guard officials who examined the vessel and its contents before sinking it).  Movant's mere conclusory allegations that the destruction of the DIOS Y MADRE resulted in the loss of evidence whose exculpatory value was apparent and which would be expected to play a significant role in the defense do not make it so.  The Court has no information or evidence before it to suggest that the Coast Guard sinking of the leaky vessel deprived defendants of access to any exculpatory evidence that would be expected to play a significant role in their defense, much less that defendants lack any other reasonable means to obtain comparable evidence.  The materiality element is thus lacking.[10]

Even if Ruiz-Murillo had shown that the sinking of the DIOS Y MADRE deprived him of material, exculpatory evidence, there is no due process violation unless he also establishes that

---

[10]     Ruiz-Murillo's only attempt to satisfy the materiality test is in his reply, wherein he notes the Ionscans and states that "[h]aving scuttled the vessel, the defendants are now without recourse to question those scans or perform tests of [their] own."  (Doc. 56, at 4.)  There is no evidence and no reason to believe that defendants will be unable to cross-examine the Government's witnesses effectively about the Ionscans without access to the DIOS Y MADRE itself.  Defendants identify nothing that would be apparently exculpatory about the vessel's rails and holds (where the scans were performed), much less any reason to believe that those areas will play a significant role in their defense.  As for defendants' suggestion that the Government failed to reveal the Ionscans to them in discovery, that assertion is refuted by the record, which unambiguously reveals that the Government furnished defendants with information about the Ionscans in discovery.

the Government's sinking of the vessel was done in bad faith.  The Government's evidence is that the Coast Guard sank the vessel because it was taking on water, there were no suitable towing points nearby (with the DIOS Y MADRE being located approximately 40 nautical miles off the coast of Colombia in international waters), and the vessel constituted a hazard to navigation.  Defendants rebut none of this.  Recall that defendants were on the DIOS Y MADRE shortly before the Coast Guard sank it.  As such, they would be well-positioned to know whether it was taking on water, where it was situated in relation to any potential towing points, and whether it posed a hazard to navigation at that time.  Rather than present any evidence of his own observations in this regard, Ruiz-Murillo merely says that he wishes to cross-examine Coast Guard agents about such matters as the location of the vessel, whether it was taking on water, whether there were towing points nearby, and the like.  (Doc. 56, at 3-4.)  The defendant's argument is highly speculative and lacks any meaningful factual content, despite the fact that Ruiz-Murillo would or should be well-situated to shed light on those matters if he wishes to do so.  The Court finds that movant has (i) failed to make the requisite showing of bad faith to warrant a finding that the sinking of the vessel deprived Ruiz-Murillo of his due process rights, and (ii) failed to make a sufficient showing to warrant an evidentiary hearing as to bad faith.

Before leaving this topic, it bears noting that the Eleventh Circuit has taken a dim view of arguments in MDLEA cases that defendants' due process rights have been violated by the sinking of their vessel, even on substantially stronger showings of the need for lost evidence onboard the vessel than Ruiz-Murillo has made here.  *See, e.g., United States v. Wilchcombe*, 838 F.3d 1179, 1191-92 (11th Cir. 2016) (rejecting argument that government violated due process by destroying boat without photographing center console in which defendant allegedly had been hiding as a stowaway, where "[n]othing in the record suggests that the Coast Guard, in destroying the boat without photographing it …, acted in bad faith. … Such a typical and reasonable law enforcement decision about how to allocate limited resources and manpower does not permit an inference of bad faith."); *Revolorio-Ramo*, 468 F.3d at 774-75 (no due process violation in government's sinking of vessel containing commercial fishing equipment and supplies, where exculpatory value of such evidence was limited to argument "that appellants were hapless fishermen unknowingly ensnared in a multinational drug running operation;" where defendants had comparable evidence – in terms of documentation of commercial fishing equipment, opportunity to cross-examine officers who viewed contents of vessel before sinking

it, and defendants' own testimony – of such fishing equipment; and where there was no evidence of bad faith, inasmuch as officers had attempted to preserve condition of vessel via still and video photographs, but "did a singularly poor job of obtaining digital images of the allegedly exculpatory evidence" because of mechanical defects in the cameras and equipment used). The arguments presented by the defendants in *Wilchcombe* and *Revolorio-Ramo* for constitutional violations arising from the Government's destruction of evidence were much stronger and much more specific than those presented by Ruiz-Murillo here, yet the Eleventh Circuit found no due process violation in both cases. The same result obtains here.

   **E. *Constitutionality of MDLEA.***

   Ruiz-Murillo's fifth and final argument propelling his Motion to Dismiss Indictment is that the MDLEA "violates the Due Process Clause because it does not require proof of a nexus between the United States and the defendant." (Doc. 41, at 3.)

   On multiple occasions, the Eleventh Circuit has unambiguously rejected this precise argument in the context of MDLEA prosecutions such as this one. *See, e.g., United States v. Cruickshank*, 837 F.3d 1182, 1188 (11th Cir. 2016) ("a criminal act does not need a nexus to the United States in order to be criminalized under the MDLEA because universal and protective principles support its extraterritorial reach") (citation and internal quotation marks omitted); *Campbell*, 743 F.3d at 812 ("Campbell argues that his convictions violated his right to due process because his offense of drug trafficking lacked a nexus to the United States, but he concedes that our precedents foreclose this argument too. … [T]he Due Process Clause of the Fifth Amendment does not prohibit the trial and conviction of an alien captured on the high seas while drug trafficking, because the Act provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas."); *Rendon*, 354 F.3d at 1325 (rejecting due process challenge where "this circuit and other circuits have not embellished the MDLEA with a nexus requirement"); *United States v. Persaud*, 605 Fed.Appx. 791, 795 (11th Cir. Mar. 20, 2015) ("Persaud and Wilson argue that the MDLEA was unconstitutionally applied to their case and that the government failed to establish a jurisdictional nexus to the United States. … [T]he conduct proscribed by the Act need not have a nexus to the United States because universal and protective principles support its extraterritorial reach."). Thus, Ruiz-Murillo's assertion that the MDLEA runs afoul of the Due Process Clause because it does not require a nexus to the United States is foreclosed in this Circuit, as a matter of law.

**III.    Analysis of Motion to Suppress.**

Five days after filing his Motion to Dismiss Indictment, Ruiz-Murillo filed a Motion to Suppress (doc. 47) that reads in large part like an extension or continuation of the arguments originally presented in the Motion to Dismiss.  Defendant concedes as much by stating in the Motion to Suppress, "This matter is inextricably intertwined with the issue of subject matter jurisdiction." (Doc. 47, at 8.)  Insofar as Ruiz-Murillo is simply reiterating arguments previously considered and rejected (*i.e.*, that the DIOS Y MADRE was not a "vessel subject to the jurisdiction of the United States" for MDLEA purposes, that the Certification by the State Department was hearsay and conclusory, that the MDLEA is unconstitutional under either the Confrontation Clause or the Due Process Clause, etc.), the Motion to Suppress is summarily **denied** for the reasons set forth *supra* in the context of the Motion to Dismiss Indictment.[11] However, the Court will separately address Ruiz-Murillo's new arguments in the Motion to Suppress relating to the vessel's location and the existence of reasonable suspicion to justify the Coast Guard search.

**A.    *Location of the Vessel.***

In briefing the Motion to Suppress, Ruiz-Murillo strenuously argues that the Government has not made a sufficient showing that the DIOS Y MADRE was in international waters during the relevant time frame.  Indeed, defendant asserts that "[t]he vessel's location at both the beginning and the end of its encounter with the United States Coast Guard is critical." (Doc. 47,

---

[11]    For example, in his Motion to Suppress, Ruiz-Murillo insists that the language in the State Department Certification that "the Government of the Republic of Colombia replied that it could neither confirm nor deny the vessel's registry or nationality" is a matter that "warrants clarification" via evidentiary hearing. (Doc. 47, at 7.)  As discussed *supra*, however, the MDLEA provides that "[t]he response of a foreign nation to a claim of registry … is proved conclusively by certification of the Secretary of State or the Secretary's designee."  46 U.S.C. § 70502(d)(2).  Thus, the Certification by the Secretary of State's designee as to Colombia's response to defendants' claim of registry is conclusive.  The matter having been conclusively proved, it does not warrant clarification.  Ruiz-Murillo's objection that such an arrangement is unconstitutional has likewise been disposed of *supra* by reference to binding Circuit precedent. *See, e.g.*, *Campbell*, 743 F.3d at 807 (as to the MDLEA, "the jurisdictional requirement serves as a diplomatic courtesy to foreign nations and as a matter of international comity. … Proof of jurisdiction does not affect the defendant's blameworthiness or culpability, which is based on the defendant's participation in drug trafficking activities, not on the smoothness of international relations between countries.") (citations and internal quotation marks omitted).  Re-plowing this ground in the context of the Motion to Suppress is unnecessary.

at 5.)  But Ruiz-Murillo never explains why he thinks that whether the vessel was in international waters or territorial seas is a question of weighty jurisdictional import.  As such, he has left the Court and the Government to guess why he contends it matters whether the DIOS Y MADRE was in the territorial waters of Colombia or in international waters when it was apprehended, boarded and searched by the U.S. Coast Guard.

The Eleventh Circuit, in a case cited by Ruiz-Murillo, has opined that where a defendant is charged with conspiracy to violate the MDLEA (as Ruiz-Murillo is), "the Government charged [defendant] with an offense against the laws of the United States, so absent a separate limit on subject matter jurisdiction, the district court had authority to adjudicate whether [defendant] conspired to violate the MDLEA."  *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008).  The *De La Garza* court elaborated that the "on board a vessel subject to the jurisdiction of the United States" component of the MDLEA is "a congressionally imposed limit on courts' subject matter jurisdiction, akin to the amount-in-controversy requirement contained in 28 U.S.C. § 1332."  *Id.*  "Therefore, for a district court to have adjudicatory authority over a charge that a defendant [possessed with intent to distribute controlled substances in violation of the MDLEA], the Government must preliminarily show that the defendant was on board a vessel subject to the jurisdiction of the United States."  *Id.* at 1271-72 (internal quotation marks omitted).  As Ruiz-Murillo recognizes, the Government may make such a showing through one of six different mechanisms prescribed by the MDLEA at 46 U.S.C. § 70502(c)(1)(A)-(F).  This is precisely what the Government has done.  As discussed in detail *supra*, the Government has shown that the DIOS Y MADRE was "a vessel without nationality" for purposes of § 70502(c)(1)(A), which renders it a "vessel subject to the jurisdiction of the United States" under the MDLEA.  The vessel's position in international or territorial waters is irrelevant to the § 70502(c)(1)(A) inquiry.  Stated differently, the DIOS Y MADRE was "a vessel without nationality" – and therefore a "vessel subject to the jurisdiction of the United States" for MDLEA purposes – whether it was located in international waters or the territorial waters of Colombia.  Movant has not explained why it matters for this jurisdictional analysis whether the

-13-

vessel was in international or territorial waters at the time of the apprehension, boarding and search by Coast Guard agents.[12]

Even assuming that Ruiz-Murillo intended to lodge a constitutional argument taking aim at Congress's authority to structure the MDLEA in a manner that criminalizes drug-trafficking conduct in another State's territorial waters, that argument would be unavailing. The evidence of record establishes that the DIOS Y MADRE was in international waters at all relevant times. That evidence includes the following: (i) the statement in the State Department Certification that "law enforcement personnel detected a go fast vessel in approximate position 06-29 N and 078-16W" (doc. 52-1, at 1); (ii) the statement of OS3 Casey Youngs that the boarding and seizure occurred "at approximate Latitude: 06-21N and Longitude: 077-059.3W" (doc. 52-2, at 38); (iii) Coast Guard incident notes from the cutter DEPENDABLE reflecting the TOI's position of "06 26N 078 04 W" when the Coast Guard took positive control of it (doc. 55-1); (iv) Coast Guard "Action Request" form listing the DIOS Y MADRE's position at the time of boarding as "06 29N 078 16W" (doc. 55-2, at 1); and (v) Special Agent Greene's testimony at the preliminary hearing that the video from the helicopter displayed the DIOS Y MADRE's coordinates in a corner of the screen, and that such coordinates were calculated as being 37-42 nautical miles off

---

[12]    To be sure, the Court in its independent research has located a strand of Eleventh Circuit authority – neither cited nor otherwise invoked in defendant's Motions – suggesting that application of the MDLEA to vessels in territorial waters of another country that has not consented to United States jurisdiction may exceed congressional authority and therefore be unconstitutional. *See generally United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1257 (11th Cir. 2012) ("Congress possesses additional constitutional authority to restrict conduct on the high seas …. And we have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause. … But we have never held that Congress has the power, under the Offences Clause, to apply our drug trafficking laws to conduct in the territorial waters of another State."); *United States v. Macias*, 654 Fed.Appx. 458, 461 (11th Cir. June 29, 2016) ("Macias does not dispute that he committed his drug trafficking offenses in international waters. Therefore, *Bellaizac-Hurtado* does not apply, and Macias's prosecution under the MDLEA for drug trafficking crimes committed onboard a stateless vessel in international waters is a constitutional exercise of extraterritorial jurisdiction under the Felonies Clause."). Again, Ruiz-Murillo has not advanced or articulated this argument in either his Motion to Dismiss or his Motion to Suppress. In an abundance of caution, however, the Court will assume that this is what he intended in arguing that the vessel's location in international waters or territorial waters is "critical" for jurisdictional purposes; therefore, the Court will examine the record evidence as to the DIOS Y MADRE's position at relevant times.

the coast of Colombia.[13]   The Court takes judicial notice that all of the listed sets of coordinates define locations that are far more than 12 miles beyond the coast of Colombia and therefore lie in international waters, as a matter of law.  *See, e.g., United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003) ("The United States generally recognizes the territorial seas of foreign nations up to twelve nautical miles adjacent to recognized foreign coasts.") (citations omitted).[14]

Notwithstanding the foregoing, Ruiz-Murillo posits that "the boat's location is a mystery."  (Doc. 47, at 5.)  Not so.  The Government's evidence documents the coordinates of the DIOS Y MADRE at the time of its apprehension and seizure.[15]  While there is some modest variation in the specific coordinates listed in different places in the record, all listed coordinates are well more than 12 miles beyond Colombia's coastline and are therefore in international waters.  It is no answer to argue, as Ruiz-Murillo does, that there has been no testimony from

_____

[13]      At the time of the preliminary hearing, Ruiz-Murillo's counsel had not yet received a copy of the helicopter video from the Government; however, the Court's understanding is that this exhibit was furnished to the defense during discovery.  To the extent, then, that defendant believes the vessel position to which Special Agent Greene testified is inaccurate or unreliable, he has all the information necessary to develop such an argument at this time, but has not done so.

[14]      *See also United States v. Williams*, 617 F.2d 1063, 1073 n.6 (5th Cir. 1980) ("This 12-mile limit includes the territorial sea, which extends to three miles from the coast, and the contiguous zone, which extends from three to 12 miles from the coast. … The high seas lie seaward of the territorial sea …. [W]e sometimes refer to the high seas beyond the contiguous zone as 'international waters.'") (citation omitted); *United States v. Chaverra-Serna*, 2015 WL 225763, *2 (M.D. Fla. Jan. 16, 2015) ("the district court is bound by decisions from the United States Supreme Court and the Eleventh Circuit Court of Appeals, which define 'international water' as all area beyond twelve miles from land"); *Michileno-Valencia v. Rothman*, 2014 WL 1048554, *3 (N.D. Ala. Mar. 18, 2014) ("the territorial waters of the coastal State … extend only 12 miles from the coast"); *United States v. Matute*, 2013 WL 6384610, *6 (S.D. Fla. Aug. 20, 2013) ("the United States recognizes UNCLOS as customary international law and recognizes a 12 mile territorial sea"); *Jori v. United States*, 2013 WL 1729219, *2 (M.D. Fla. Apr. 22, 2013) ("the United States generally recognizes the territorial waters of foreign nations up to twelve nautical miles adjacent to their coasts"); United Nations Convention on the Law of the Sea, Dec. 10, 1982, 21 I.L.M. 1245, 1272, Part II § 2, Art. 3 ("Every State has the right to establish the breadth of its territorial sea up to a limit not exceeding 12 nautical miles, measured from baselines determined in accordance with this Convention.").

[15]      Defendant does not dispute the accuracy of those coordinates, stating, "All we know for certain are distance approximations and map coordinates, and these of the arrest point." (Doc. 56, at 2.)

"someone who can point out the locations on a map." (Doc. 56, at 2.) The Government need not elicit testimony from a witness to place the specific coordinates of the DIOS Y MADRE on a map; to the contrary, the mapping of those coordinates is an objective fact, not subject to reasonable dispute, of which the Court may properly take judicial notice.[16] Readily available online mapping services unequivocally establish that the subject coordinates are located in the Pacific Ocean, dozens of miles west of the Colombian coastline.[17]

In light of the foregoing, Ruiz-Murillo's arguments for suppression of evidence or dismissal of the Indictment on the theory that the DIOS Y MADRE was in Colombian territorial waters, and that the Coast Guard therefore lacked authority to apprehend it or to enforce United States controlled substances laws in that location, must fail.

**B.     Reasonable Suspicion for the Search.**

Finally, Ruiz-Murillo moves for suppression of all evidence seized as a result of the Coast Guard's search of the DIOS Y MADRE as violative of the Fourth Amendment.

Both sides agree that United States law enforcement agents were permitted to apprehend and search the DIOS Y MADRE in international waters if they possessed reasonable suspicion that the vessel was engaged in activity that violates United States law. (*See* doc. 47, at 7; doc. 55, at 3-7.) As the Eleventh Circuit has observed, "the Coast Guard may properly stop and board

---

[16]       *See, e.g., United States v. Burroughs*, 810 F.3d 833, 835 n.1 (D.C. Cir. 2016) (taking judicial notice of a Google map as a "source[] whose accuracy cannot reasonably be questioned" for purposes of identifying arrest area and layout of the block); *United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) ("We take judicial notice of a Google map and satellite image as a 'source[] whose accuracy cannot reasonably be questioned,' at least for the purpose of determining the general location of the home."); *cf. Boyce Motor Lines v. United States*, 342 U.S. 337, 344, 72 S.Ct. 329, 96 L.Ed. 367 (1952) ("We may, of course, take judicial notice of geography.") (Jackson, J., dissenting).

[17]       The record also conclusively refutes any suggestion that the DIOS Y MADRE may have been in Colombian waters when the first Coast Guard contact was made, then traveled out to international waters in time for the stop. Coast Guard reports show that when the DEPENDABLE's helicopter first made visual contact, the DIOS Y MADRE (a 25-foot boat) was "riding low in the water" at a speed of "approximately 15 kts." (Doc. 42-2, at 36.) There was no prolonged pursuit of the vessel after the helicopter made its presence known to defendants; therefore, we know that the initial contact point was in close proximity to the boarding/seizure point (and certainly not tens of miles away, as would be necessary to place the DIOS Y MADRE in Colombian territorial waters at any relevant time).

a foreign vessel in international waters … if it has a reasonable suspicion that the vessel is engaged in smuggling contraband into the United States." *United States v. Reeh*, 780 F.2d 1541, 1544 (11th Cir. 1986) (noting that "reasonable suspicion" may be satisfied by Coast Guard observations of two boats traveling at unusually high speed, with only one person on each boat – too few for fishing – and without observing usual custom of slowing at a particular point); *see also United States v. Cardona-Sandoval*, 6 F.3d 15, 23 (1st Cir. 1993) ("we require that the Coast Guard possess 'reasonable and articulable grounds for suspecting that the vessel or those on board are engaging in criminal activities' before conducting a thorough search") (citations omitted).  The reasonable suspicion analysis requires scrutiny of "the totality of the particular circumstances. … [R]easonable suspicion must be based on specific articulable facts, together with rational inferences from those facts." *Reeh*, 780 F.2d at 1544 (citations and internal quotation marks omitted).

The Government raises a number of threshold arguments in opposition to Ruiz-Murillo's Fourth Amendment challenge.  Specifically, the Government presents argument and authority that Ruiz-Murillo lacks standing to challenge the search, that his expectation of privacy was diminished because of the circumstances and exigencies of the maritime setting, that he had no reasonable expectation of privacy in the kilogram package of cocaine jettisoned from the vessel or the Ionscans taken from the rails and holds of the vessel, and that the Fourth Amendment has no application to activities of the United States directed against aliens in international waters. Assuming (without deciding) that all of these preliminary arguments fail and that Ruiz-Murillo was subject to Fourth Amendment protection at the time of the subject search and seizure, the Motion to Suppress would nonetheless be properly denied, for the simple reason that the Coast Guard possessed reasonable suspicion to stop and board the DIOS Y MADRE.

Among the record facts shown by the Government to support a "reasonable suspicion" determination in this case are the following: (i) the vessel had been spotted numerous times, but had never been engaged in fishing; (ii) the vessel was on a course/route consistent with drug smuggling operations; (iii) the vessel was underway at night without navigation lights energized; (iv) as the Coast Guard approached, the vessel made erratic course and speed changes; (v) the vessel's crew was seen apparently jettisoning weighted bales of cargo; (vi) the vessel was riding abnormally low in the water, suggesting a heavy cargo; (vii) the small, open-hull vessel was in the Pacific Ocean, more than 40 miles off the coast of Colombia; and (viii) upon boarding, Coast

Guard agents viewed no fish, no fishing rods and no fishing equipment (aside from some nets) aboard the vessel.  (*See* doc. 55-2; doc. 52-2, at 24, 32, 34, 36.)  These circumstances, taken in the aggregate, warrant a determination that the Coast Guard's actions on the night in question were supported by reasonable suspicion, such that no Fourth Amendment violation occurred.[18]

## IV.    Motion for Severance.

Ruiz-Murillo's flurry of pre-trial motions also includes a Motion for Severance (doc. 42). In that Motion, Ruiz-Murillo posits that his co-defendant Ericirilo Murillo-Ruiz made a custodial confession that incriminates him, thereby creating a *Bruton* problem.  On that basis, Ruiz-Murillo moves for a severance of his trial from the trial of Ericirilo Murillo-Ruiz.

At a pretrial conference conducted on March 14, 2017 before Magistrate Judge Bivins, Ericirilo Murillo-Ruiz, by and through counsel of record, indicated his intent to plead guilty to Count One of the Indictment pursuant to a written plea agreement.  Murillo-Ruiz is set to appear

---

[18]    Ruiz-Murillo has demanded an evidentiary hearing on the Fourth Amendment issue "to develop testimony regarding the circumstances surrounding the boarding of said vessel."  (Doc. 47, at 8.)  The law is clear, however, that a defendant is not entitled to a hearing on a motion to suppress simply because he requests one.  *See, e.g., United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) ("Where a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion.") (citation omitted); *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) (district court "may refuse a defendant's request for a suppression hearing … if the defendant fails to allege facts that, if proved, would require the grant of relief"); *United States v. Booker*, 131 Fed.Appx. 234, 243 n.4 (11th Cir. May 12, 2005) ("Because Booker … failed to allege facts supporting his conclusory argument that the affiant omitted facts relevant to the determination of probable cause, or that, if taken as true, would have required grant of relief, the district court also did not abuse its discretion in denying Booker a suppression hearing."). The briefing schedule entered by this Court on February 16, 2017 expressly cautioned Ruiz-Murillo that no evidentiary hearing would be set as a matter of course and that, "[t]o the extent either side believes a hearing is necessary or appropriate, it must set forth a particularized explanation for this belief in its memorandum."  (Doc. 48, at 1.)  Ruiz-Murillo did not do so.  He did not identify any facts that, if proved, would entitle him to relief.  Instead, he simply challenged the veracity of the Government's narrative of the events in question and asked for a hearing to "develop testimony" on the subject.  A criminal defendant's speculation that Government witnesses might say something different on cross-examination than they said in their written reports or preliminary hearing testimony is not enough to satisfy the threshold burden to obtain an evidentiary hearing.  Ruiz-Murillo having done nothing more, he is not entitled to an evidentiary hearing in hopes of eliciting contradictory information from Coast Guard representatives involved in the arrest, boarding and detention of the DIOS Y MADRE.

before the undersigned for a change-of-plea hearing on March 16, 2017.  (*See* doc. 64.)  These developments eliminate the *Bruton* issue identified by Ruiz-Murillo and render his Motion for Severance **MOOT**.  Ruiz-Murillo is free to renew his Motion for Severance if Murillo-Ruiz does not plead guilty, if his guilty plea is not accepted by this Court, or if Murillo-Ruiz otherwise is returned to the trial docket.

**V.     Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.     The Motions to Adopt (docs. 49 & 50) filed by defendants Ercirilo Murillo-Ruiz and Jhonatan Granja Angulo are **granted**;

2.     Defendant Teofilo Ruiz-Murillo's Motion to Dismiss Indictment (doc. 41) is **denied;**

3.     Defendant Teofilo Ruiz-Murillo's Motion to Suppress (doc. 47) is **denied**; and

4.     Defendant Teofilo Ruiz-Murillo's Motion for Severance (doc. 42) is **moot** because the co-defendant as to whom he seeks severance has announced his intention to plead guilty.

DONE and ORDERED this 15th day of March, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE